```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------X
                                    |
DWAYNE BROWN,                       |
                                    |
            Petitioner,             |
                                    |    06 Civ. 4824 (KMW)
      -against-                     |
                                    |    OPINION AND ORDER
JERRY GREENE, Superintendent,       |
      Great Meadow Correctional     |
      Facility, and ELIOT SPITZER,  |
      Attorney General of New York  |
      State,                        |
                                    |
            Respondents.            |
                                    |
-----------------------------------X
```
KIMBA M. WOOD, U.S.D.J.:

Petitioner Dwayne Brown brings this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner asserts that he was denied effective assistance of counsel because his lawyer did not object to the jury charge given at trial. By report and recommendation dated May 11, 2007 (the "Report"), Magistrate Judge Andrew J. Peck recommended that the petition be granted. Respondents objected to portions of the Report. For the reasons stated below, the Court disagrees with the Report and denies the petition.

**BACKGROUND**

The Report contains a more detailed description of the facts, familiarity with which is assumed. See Brown v. Greene, 06 Civ. 4824, 2007 WL 1379873, at *1-8 (S.D.N.Y. May 11, 2007).

Petitioner was charged by a New York County Grand Jury with Robbery in the Second Degree and Grand Larceny in the Fourth

Degree. In June 2002, Petitioner was tried in Supreme Court, New York County, before Justice Edward J. McLaughlin and a jury.

As part of the jury charge, Justice McLaughlin instructed the jury on the concept of reasonable doubt ("reasonable doubt instruction"), and gave the following instruction regarding the burden of proof for certain fact finding ("subsidiary fact instruction"):

> Crimes are defined by elements. The focus of a trial is to determine whether or not the prosecution can prove the elements of a crime beyond a reasonable doubt.
>
> During the course of a trial, things happen. You hear testimony. You can spend your deliberation time trying to resolve each and everything that you heard. My suggestion is you try to resolve only the things that you need to resolve in order to make a determination whether the People have proven the elements of a charge beyond a reasonable doubt.
>
> A jury makes factual findings. 50.1 to 49.9, factual findings can be made, although they are not established beyond a reasonable doubt.
>
> The elements must be established beyond a reasonable doubt if they're going to be established at all.

(Tr. 716:22 - 717:15.) Neither party objected to this instruction at the time.

On June 26, 2002, Petitioner was convicted of second-degree robbery. He was subsequently sentenced to a minimum term of 16 years to life imprisonment. Petitioner appealed his conviction to the Appellate Division, claiming that he was denied effective assistance of counsel because his lawyer failed to object to the jury charge given at trial. On January 6, 2005, the Appellate

Division affirmed Petitioner's conviction, summarily rejecting his ineffective assistance of counsel claim. See People v. Brown, 789 N.Y.S.2d 106, 107-08 (N.Y. App. Div. 2005) ("The record establishes that [Petitioner] received effective assistance of counsel."). On April 4, 2005, the New York Court of Appeals denied Petitioner leave to appeal. See People v. Brown, 830 N.E.2d 325 (N.Y. 2005).

Petitioner timely filed this petition, pursuant to 28 U.S.C. § 2254 ("Section 2254"), on June 22, 2006, raising a single claim: that he was denied effective assistance of counsel at trial because his lawyer failed to object to Justice McLaughlin's jury charge, which Petitioner claims "diminished the Prosecution's burden of proving [Petitioner's] guilt beyond a reasonable doubt." (Pet. ¶ 12.)

The Report recommended that the petition be granted. See Brown, 2007 WL 1379873, at *27. Respondents filed timely written objections to the Report on May 25, 2007. Petitioner responded to these objections in a June 4, 2007 letter to the Court.

**STANDARD OF REVIEW**

The Court must consider the Report de novo because Respondents filed timely written objections. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

**DISCUSSION**

**I.     THE SECTION 2254 STANDARD OF REVIEW FOR HABEAS PETITIONS.**

Under Section 2254, a court may grant a petition for a writ of habeas corpus filed by a person held in state custody only where the adjudication of the person's claim in state court "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1) (2007).

A state court decision constitutes an "unreasonable application" of federal law "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." <u>Williams v. Taylor</u>, 529 U.S. 362, 407 (2000). The Supreme Court clarified that "an <u>unreasonable</u> application of federal law is different from an <u>incorrect</u> or <u>erroneous</u> application of federal law." <u>Id.</u> at 412 (emphasis in original). Thus, a federal court cannot grant habeas relief simply because, in its independent judgment, it would have decided the federal law question differently than the state court. See <u>Aparicio v. Artuz</u>, 269 F.3d 78, 94 (2d Cir. 2001). Rather, the state court's application of federal law must reflect some "additional increment of incorrectness such that it may be said to be unreasonable." <u>Id.</u>

In this case, the parties agree that the relevant "clearly established Federal law, as determined by the Supreme Court of

the United States" is the law regarding ineffective assistance of counsel that was articulated in Strickland v. Washington, 466 U.S. 668, 687 (1984).  To prevail on an ineffective assistance of counsel claim, Petitioner must show that (1) his lawyer's performance fell below an "objective standard of reasonableness," and (2) Petitioner was prejudiced as a result.  Id. at 688, 692; see also Kieser v. New York, 56 F.3d 16, 18 (2d Cir. 1995).  In applying Strickland, a reviewing court need not "address both components of the inquiry if the defendant makes an insufficient showing on one."  Strickland, 466 U.S. at 697.

Therefore, to succeed on this Section 2254 petition, Petitioner must show that the Appellate Division's application of Strickland to the facts of his case was "objectively unreasonable."  Bell v. Cone, 535 U.S. 685, 698-99 (2002).

**II. THE APPELLATE DIVISION'S APPLICATION OF *STRICKLAND* TO PETITIONER'S CASE WAS REASONABLE.**

The Appellate Division could have reasonably concluded that Petitioner failed to show that he was prejudiced as a result of his lawyer's conduct at trial.  The court's decision to deny Petitioner's ineffective assistance of counsel claim under Strickland was therefore reasonable.

To show such prejudice under Strickland, Petitioner must demonstrate that there is a "reasonable probability" that, but for his lawyer's failure to object to Justice McLaughlin's jury charge, "the result of the proceeding would have been different."

5

Strickland, 466 U.S. at 694.  A court may presume that Petitioner was prejudiced in this manner if the jury charge contained a reasonable doubt instruction that was constitutionally deficient. Bloomer v. United States, 162 F.3d 187, 194 (2d Cir. 1998).  A reasonable doubt instruction is constitutionally deficient where there is a "reasonable likelihood that the jury understood the instructions to allow conviction based on proof insufficient to meet the Winship standard" of "proof beyond a reasonable doubt of every fact necessary to constitute the crime with which [Petitioner] is charged."  Gaines v. Kelly, 202 F.3d 598, 602, 605 (2d Cir. 2000) (quoting Victor v. Nebraska, 511 U.S. 1, 6 (1994) and In re Winship, 397 U.S. 358, 364 (1970)).  In making this determination, a reviewing court must view the challenged portions of the jury charge "not 'in artificial isolation,' but rather 'in the context of the overall charge.'"  Justice v. Hoke, 45 F.3d 33, 34 (2d Cir. 1995) (quoting Cupp v. Naughten, 414 U.S. 141, 146-47 (1973)).

Petitioner argues that the reasonable doubt instruction given at his trial was constitutionally deficient because it lowered the prosecution's burden of proof for conviction. Specifically, Petitioner contends that because the subsidiary fact instruction referenced the preponderance of the evidence standard ("50.1 to 49.9") in the context of explaining the concept of reasonable doubt, there was a reasonable likelihood

that the jury understood the charge to permit conviction based on proof insufficient to meet the standard of proof beyond a reasonable doubt. (Pet. § 12.)

Reviewing the record de novo, the Court finds that the Appellate Division could have reasonably concluded that the jury charge, "taken as a whole . . . correctly conveyed the concept of reasonable doubt to the jury." Holland v. United States, 348 U.S. 121, 140 (1954).

## A. JUSTICE MCLAUGHLIN'S JURY CHARGE, TAKEN AS A WHOLE, WAS CONSTITUTIONALLY PERMISSIBLE.

The Second Circuit has upheld instructions similar to Justice McLaughlin's subsidiary fact instruction where the charge as a whole correctly conveyed the concept of reasonable doubt. For example, in Justice v. Hoke, 45 F.3d 33, 35 (2d Cir. 1995), the Second Circuit found that language suggesting a separate burden of proof for subsidiary facts was constitutionally permissible when viewed in the context of the entire jury charge.[1] The court noted that while the problematic language

---

[1] The challenged instructions in Hoke stated:

> Leave the law alone for the moment. I think it's a truism in the law, which is know your facts and the law will almost take care of itself. But, figuratively speaking, you have to sort out the facts. <u>Decide in your own minds who you believe, what happened here, et cetera, and then once you're reconciled and agreed as to the facts, look at the law and see if the People have met their burden beyond a reasonable doubt as to each and every element.</u>

Hoke, 45 F.3d at 34-35 (emphasis in original).

"was hardly a model explanation of the reasonable doubt standard," it was "highly unlikely" that the jury convicted the defendant using an incorrect burden of proof given the fact that "[t]hey were instructed many times that the prosecution must prove each element of the charged crimes beyond a reasonable doubt." Hoke, 45 F.3d at 35.

Similarly, in United States v. Delibac, 925 F.2d 610, 614 (2d Cir. 1991), the Second Circuit upheld jury instructions that stated that the jury "need not find every fact beyond a reasonable doubt."[2] In that case, the court advised that while such instructions were "probably confusing and certainly unnecessary," they were nevertheless a "correct statement of the law." Id. In upholding the challenged instructions, the court concluded that the charge "taken as a whole, adequately conveys the concept of reasonable doubt." Id. (internal citation omitted); see also United States v. Gatzonis, 805 F.2d 72, 74 (2d Cir. 1986) (upholding a jury charge containing similarly worded instructions); United States v. Viafara-Rodriguez, 729 F.2d 912, 914 (2d Cir. 1984) (same).[3]

---

[2] The challenged instructions in Delibac, stated, "To support a verdict of guilty, you need not find every fact beyond a reasonable doubt. You need only find that the government has established by the evidence and beyond a reasonable doubt each and every essential element of the crime charged." Delibac, 925 F.2d at 614 (emphasis added).

[3] The challenged instructions in Gatzonis and Viafara-Rodriguez were identical, and stated, "The requirement of proof beyond a reasonable doubt operates on the whole case, and not on the separate

8

Given this precedent, the Appellate Division could have reasonably concluded that the subsidiary fact instruction survives constitutional scrutiny because Justice McLaughlin's jury charge as a whole correctly conveyed the concept of reasonable doubt. During the charge, Justice McLaughlin instructed the jury multiple times that the prosecution must prove each element of the offense beyond a reasonable doubt.[4] (Tr. 713:23 - 716:6; 717:13-25; 721:13 - 723:4.) Justice McLaughlin also specifically explained which facts comprise the three elements of the robbery offense, and emphasized that these facts must be proven beyond a reasonable doubt in order to support a conviction. (Tr. 721:13 - 723:4.) The subsidiary fact instruction itself states that facts determined using the "50.1 to 49.9" standard "are not established beyond a reasonable

---

bits of evidence. And each individual item of evidence need not be proven beyond a reasonable doubt." Gatzonis, 805 F.2d at 73 (emphasis added); see also Viafara-Rodriquez, 729 F.2d at 913.

[4] The Report notes that in United States v. Bloomer, 162 F.3d 187, 194 (2d Cir. 1998), the Second Circuit struck down a jury charge as constitutionally deficient, despite the fact that the trial court had used the correct standard "at least 17" times. Brown, 2007 WL 1379873, at *24. Bloomer's reasoning is inapplicable to this case, however, because the challenged instructions in Bloomer, which instructed the jury that they "may acquit" if the prosecution fails to meet its burden, created a significantly greater risk of jury confusion than the subsidiary fact instruction here. See id. at 194 (adopting reasoning in United States v. Birbal, 62 F.3d 456, 460 (2d Cir. 1995), which held that the "may acquit" language "gave the jury the clearly unlawful option of convicting on a lower standard of proof") (emphasis added). As discussed above, the subsidiary fact instruction is more similar to the instructions in Hoke and Delibac, which were upheld by the Second Circuit when viewed in the context of the charge as a whole.

9

doubt," whereas "[t]he elements [of the offense] must be established beyond a reasonable doubt." (Tr. 717:9-15.) Given these numerous and express references to the proper burden of proof for conviction, the Appellate Division could have reasonably concluded that Justice McLaughlin's jury charge, taken as a whole, was constitutionally permissible.[5] See Hoke, 45 F.3d at 35 (upholding similar jury charge where jury was instructed "many times" on the proper burden of proof for conviction).

The Report distinguishes the subsidiary fact instruction from the challenged instructions in Hoke and Delibac, reasoning that the subsidiary fact instruction is "more analogous" to instructions where "even a single use of [the] 'preponderance' language . . . resulted in reversal." Brown, 2007 WL 1379873, at *21. But those "single use" preponderance instructions explicitly permitted the jury to convict the defendant on a

---

[5] The Report's citation to Callahan v. LeFevre, 605 F.2d 70 (2d Cir. 1979) does not alter the Court's conclusion. Brown, 2007 WL 1379873, at *19. In Callahan, the trial court instructed the jury that "[i]f you believe [the testimony of the two eyewitnesses] which was given to you under oath, after they have invoked the aid of the Almighty as their Judge, and they told you what they heard and saw, then you are convinced beyond a reasonable doubt." Id. at 73 (emphasis added). In striking down this charge, the Second Circuit explained that "[i]f the jurors decided that it was somewhat more likely than not that [the two witnesses'] testimony was true and that they therefore 'believed' the witnesses, the court's instruction allowed, indeed ordered, the jury to bootstrap this belief into proof beyond a reasonable doubt." Id. at 74. No such "bootstrapping" is likely in this case because the subsidiary fact instruction in no way equated the preponderance standard with the reasonable doubt standard. In fact, Justice McLaughlin explicitly stated that "50.1 to 49.9, factual findings . . . are not established beyond a reasonable doubt." (Tr. 717:9-12.)

10

preponderance of the evidence standard. See, e.g., People v. Young, 653 N.Y.S.2d 471, 472 (N.Y. App. Div. 1997) (striking down instruction that stated "it is possible to establish the guilt of a defendant charged with a crime to a <u>reasonable degree of certainty</u>") (emphasis in original); People v. Bailey, 503 N.Y.S.2d 16, 18 (N.Y. App. Div. 1986) (reversing conviction where the court instructed the jury that "there must be a preponderance in order to establish guilt"). By contrast, the subsidiary fact instruction here does not explicitly permit conviction on a preponderance standard. Rather, the subsidiary fact instruction states that the elements of the crime must be proven beyond a reasonable doubt in order to support conviction. (Tr. 717:13-15.) The Report's comparison is therefore inappropriate.[6]

The Report also concludes that Justice McLaughlin's "fail[ure] to explain the distinction between those elemental facts which required proof beyond a reasonable doubt and those subsidiary facts which did not need to be proven beyond a

---

[6] The Report further concludes that Justice McLaughlin's jury charge "indivisibly bound proof of each element of the crimes charged to the 'factual findings' of the jury, and thus to the preponderance standard." Brown, 2007 WL 1379873, at *22. But simply suggesting, as the jury charge did here, that certain factual findings can be found using the preponderance standard does not "indivisibly" bind proof of the elements to that standard. Indeed, as discussed above, the Second Circuit upheld the charges at issue in Hoke and Delibac despite the fact that they too suggested a lower burden of proof for certain factual findings. In this case, Justice McLaughlin expressly stated on a number of occasions that the "elements must be established beyond a reasonable doubt," making clear the appropriate burden of proof for the elements of the crime. (Tr. 717:13-15.)

11

reasonable doubt" tainted the otherwise proper reasonable doubt instructions given in the charge, and allowed the jury to convict Petitioner using an incorrect standard. Brown, 2007 WL 1379873, at *23. But in Delibac, Gatzonis, and Viafara-Rodriguez, the Second Circuit upheld instructions that similarly did not explain the distinction between which facts required proof beyond a reasonable doubt, and which facts "need not be proven beyond a reasonable doubt." Gatzonis, 805 F.2d at 73; see also Delibac, 925 F.2d at 614; Viafara-Rodriguez, 729 F.2d at 913. Thus, Justice McLaughlin's failure to fully explain which facts can be proven using a preponderance standard, as opposed to a reasonable doubt standard, is insufficient to render his jury charge constitutionally deficient.[7] See Cupp v. Naughten, 414 U.S. 141,

---

[7] The Report, citing United States v. Birbal, 62 F.3d 456, 460 (2d Cir. 1995), concludes that Justice McLaughlin's failure to explain the relationship between the two burdens of proof led to "conflicting instructions" that left the jury "uncertain of the standard it was charged with applying." Brown, 2007 WL 1379873, at *24. The "conflicting instructions" in Birbal, however, are materially different than the instructions at issue here. In Birbal, the court instructed the jury that (1) "[y]ou cannot find the defendants guilty unless the government has met [its] burden of proof," and (2) "[s]hould the prosecution fail to prove the guilt of the defendant beyond a reasonable doubt, you may acquit the defendant on the presumption of innocence." Birbal, 62 F.3d at 460 (emphasis added). The Second Circuit rightly found these two diametrically opposed instructions to be "conflicting" and, ultimately, constitutionally deficient. The same, however, cannot be said about the subsidiary fact instruction in this case. While the instruction contains a certain ambiguity as to the precise interaction between the preponderance burden and reasonable doubt burden, the Second Circuit has upheld comparable instructions, containing a similar ambiguity, where the charge as a whole conveyed the proper burden of proof for conviction. See Delibac, 925 F.2d at 614; Gatzonis, 805 F.2d at 73; Viafara-Rodriguez, 729 F.2d at 913.

12

149 (1973) ("Whatever tangential undercutting of [the charge's] clearly stated propositions may, as a theoretical matter, have resulted from the giving of the [challenged instruction] is not of constitutional dimension.").

The Court is similarly unpersuaded by the Report's conclusion that the "election example" instruction given at the end of Justice McLaughlin's jury charge was likely to mislead the jury as to the proper burden of proof.[8] Brown, 2007 WL 1379873, at *22 (citing Bollenbach v. United States, 326 U.S. 607, 612 (1946)). Although this instruction repeats the "50.1 to 49.9" language of the subsidiary fact instruction, that language, fairly read, refers not to any applicable burden of proof, but to an example of simple majority voting, which the court then used as a foil to explain how the jury should deliberate to reach a unanimous verdict. Any risk that the repetition of this numerical expression would confuse the jury is further mitigated

---

[8] The election example instruction states:

> The two most important civic functions that people do are to vote and to serve on juries. And for centuries elections have been closely decided. 50.1 beats 49.9 every time, and then you're stuck with somebody for two, four, six or in the case of some judicial elections fourteen long years. And, yet, for 230 years now, juries, the same pool of people who can't agree on a candidate, have been unanimously deciding cases.
>
> So, how does that happen? It happens, obviously, because within the jury deliberation context, people sometimes change their minds.

(Tr. 723:12-24.)

13

by the numerous and emphatic references to the proper reasonable doubt standard given throughout the charge. See Hoke, 45 F.3d at 35 (finding it "highly unlikely" that jury used a lower burden of proof where they were "instructed many times" on the proper reasonable doubt standard).

Thus, the Appellate Division could have reasonably concluded that the jury charge given at Petitioner's trial, taken as a whole, was constitutionally permissible.

**B. JUSTICE MCLAUGHLIN'S JURY CHARGE IS DISTINGUISHABLE FROM THE JURY CHARGE IN PEOPLE v. JOHNSON.**

In concluding that Justice McLaughlin's jury charge was constitutionally deficient, the Report relies heavily on People v. Johnson, 783 N.Y.S.2d 5 (N.Y. App. Div. 2004). Brown, 2007 WL 1379873, at *13-16, 27. In that case, the court reversed the defendant's conviction, finding that three particular portions of the overall jury charge - the "two-inference instruction,"[9] the "preponderance of the evidence for fact finding instruction,"[10]

---

[9] The two-inference instruction stated:

[W]here two factual inferences can be drawn from the evidence, both being of equal weight and strength, one factual inference consistent with guilt and the other factual inference consistent with innocence, any defendant is entitled to the factual inference of innocence.

Johnson, 783 N.Y.S.2d at 6.

[10] The preponderance of the evidence for fact finding instruction stated:

With regard to facts and with regard to the verdict, there are two different burdens of proof operating simultaneously . . .

14

and the "unanimous verdict instruction"[11] - were improper. Johnson, 783 N.Y.S.2d at 8. The Report found that the preponderance of the evidence for fact finding instruction and the unanimous verdict instruction were similar to the subsidiary fact instruction and the election example instruction, respectively, given in this case. Brown, 2007 WL 1379873, at *13 n.28, 14 n.29. Although the Court agrees that there are similarities in the language used by these particular instructions, the Court ultimately concludes that the charge at issue here, taken as a whole, is distinguishable from the charge struck down in Johnson.

Critically, the jury charge in this case did not include the two-inference instruction; this lessened the risk that the charge as a whole conveyed the improper standard. The Johnson court's

---

. With regard to finding of fact during the course of your deliberations, the burden of proof is simply that it is more likely than not that the fact exists, 50.1 beating 49.9.

Johnson, 783 N.Y.S.2d at 6-7.

[11] The unanimous verdict instruction stated:

The two most important civic functions that citizens do are to vote and to serve on juries. In voting in elections, close counts, 50.1 beats 49.9 every time . . . . The same group, citizens who can't elect anybody by acclamation, who elect some people 50.1 vote to 49.9, minus one vote, have for about two hundred thirty years rendered unanimous verdicts. How does that happen[?] . . . [Y]ou can change your opinion, your vote, provided based on reason, logic, common sense, and reliance on the record of this case if somebody can cause you to change your mind.

Johnson, 783 N.Y.S.2d at 8.

15

decision to disapprove of the jury charge was based primarily on the deficiencies found in the two-inference instruction. See Johnson, 783 N.Y.S.2d at 7, 7-9 ("This Court has repeatedly expressed its disapproval of the 'two-inference' charge."). After expressing its disapproval of that instruction, the Johnson court noted that the jury had heard the two-inference instruction and the preponderance of the evidence for fact finding instruction in succession. Id. at 8. In that context, the court then found that:

> <u>These instructions</u> are not merely potentially confusing. <u>They</u> could undermine the jury's understanding of the presumption of innocence, the burden of proof and the standard of proof beyond a reasonable doubt. Instead of reducing the risk "that a juror might draw the negative inference that if the scales are uneven, that is enough to convict," <u>they</u> increase it.

Id. (emphasis added). The Johnson court's ruling was therefore based on the risk of jury confusion created by the <u>combined effect</u> of the two-inference instruction and preponderance of the evidence for fact finding instruction. No such risk exists in this case because the jury charge here does not include the two-inference instruction.[12]

---

[12] The Report notes that the Johnson court "incorporated by reference" Justice Saxe's concurrence, which specifically criticized the preponderance of the evidence for fact finding instruction as improper. Brown, 2007 WL 1379873, at *14-15. To the extent that these criticisms apply by analogy to the subsidiary fact instruction in this case, the Court notes that the Second Circuit has upheld charges similar to the subsidiary fact instruction in the past. See, e.g., Justice v. Hoke, 45 F.3d 33 (2d Cir. 1995); United States v. Delibac, 925 F.2d 610 (2d Cir. 1991); see also Section II.A supra. In fact, Justice Saxe admitted that "[a] degree of support for [the

16

The absence of the two-inference instruction in this case also eliminates the risk, identified by the Report, that the election example instruction would confuse the jury as to the appropriate burden of proof for conviction. See Brown, 2007 WL 1379873, at *22. The Johnson court found that the unanimous verdict instruction, which the Report concludes is similar to the election example instruction, "could only have reinforced the court's improper instruction on the standard of proof." Johnson, 783 N.Y.S.2d at 9. However, as discussed above, the "improper instruction on the standard of proof" in Johnson refers to the combination of the two-inference instruction and preponderance of the evidence for fact finding instruction. The jury charge here includes only the subsidiary fact instruction, which is constitutionally permissible when given in the context of a charge that, as here, included multiple references to the proper burden of proof. Delibac, 925 F.2d at 614. Therefore, Johnson's reasoning regarding the unanimous verdict instruction does not apply to the election example instruction here.

**CONCLUSION**

For the reasons set forth above, the Court concludes that the Appellate Division's application of Strickland to Petitioner's case was reasonable. Specifically, after reviewing

---

preponderance on fact finding instruction] is concededly found in United States v. Viafara-Rodriguez, 729 F.2d 912 (2d Cir. 1984)." Johnson, 783 N.Y.S.2d at 10 (Saxe, J., concurring).

17

applicable federal and state precedent, the Court finds that the Appellate Division could have reasonably concluded that Justice McLaughlin's jury charge, taken as a whole, was constitutionally permissible.

The Court emphasizes that under Section 2254, the Court's inquiry is limited to whether the Appellate Division unreasonably applied Strickland to the facts of this case. Williams v. Taylor, 529 U.S. 362, 412 (2000). Given this standard, the Court concludes that despite the close question of law presented by this petition, the Appellate Division could have reasonably found that Petitioner received effective assistance of counsel.

Accordingly, Petitioner's Section 2254 petition (Dkt. No. 2) is DENIED. A certificate of appealability will issue because "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner." See Slack v. McDaniel, 529 U.S. 473, 475 (2000). The Clerk of Court is directed to close this case; any pending motions are moot.

SO ORDERED.

Dated: New York, New York
November 5, 2007

_____
Kimba M. Wood
United States District Judge

18